UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<u>SERVED AND FILED VIA ECF</u>

---------------------------------------------------------------------- X

UNITED STATES OF AMERICA,

- against –

FRANCISCO OCHOA-JOAQUIN,

Defendant.

17 CR 618 (PKC

---------------------------------------------------------------------- X

<u>SENTENCING MEMORANDUM OF
DEFENDANT FRANCISCO OCHOA-JOAQUIN</u>

Defendant, Francisco Ochoa-Joaquin, through his undersigned counsel, respectfully submits this Sentencing Memorandum for the Court's. Sentencing is scheduled for November 2, 2018 at 10:30a.m. In light of all of the factors enumerated in 18 U.S.C. § 3553(a), discussed in pertinent detail below, defense counsel respectfully request that the Court impose a sentence of time-served. Since the defendant is immediately deportable, having been brought to the United States in custody, a term of supervised release is inappropriate. He lacks the ability to pay a fine.

In analyzing the appropriate sentence, it is, respectfully, essential that this Court have in mind the limited role played by the Sentencing Guidelines. The Supreme Court has specifically rejected any notion that the Guidelines represent a somehow presumptively correct range. In Nelson v. United States, 129 S.Ct. 890 (2009), the Court summarily reversed the Fourth Circuit which had upheld a district court's application of a presumption of reasonableness to the Guidelines:

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

*Id*. at 892. (Emphasis in original.) Thus, the Guidelines are now only one factor to be considered in the formulation of a minimally sufficient individualized sentence.

When imposing sentence, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)[1] in order to create an "individualized assessment" based on a defendant's particular circumstances. Gall vs. United States, 552

---

[1] The relevant factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed" to, inter alia: provide just punishment, deter criminal conduct, protect the public from any future crimes by the defendant, and provide the defendant with rehabilitative training and treatment; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established" for the offense; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

U.S. 38, 49-50 (2007); see also United States v. Cavera, 550 F.3d 180, 188-89 (2d Cir. 2008) (en banc), holding that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime."

Thus, this Court has ample discretion to impose a sentence that takes into account the Guidelines, but confines them to but a single factor among many others. See Kimbrough v. United States, 552 U.S. 85, 101-10 (2007). In doing so, the Court may consider, and rely upon, any information available concerning the background, character, or conduct of the defendant. See Cavera, 550 F.3d at 189-91; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense for which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Moreover, in making an "individualized assessment," the Court is not only empowered to impose a sentence below the Guidelines range, it is required to do so where a lower sentence would be sufficient to comply with the purposes of Section 3553(a). See, e.g., United States v. Dorvee, 616 F.3d 174, 183-84 (2d Cir. 2010); United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006). In a post-*Booker* world, the Guidelines carry no presumption of reasonableness.

This is consistent with the long-standing principle that a Court consider "every convicted person as an individual" and that "the punishment should fit the offender and not merely the crime." Pepper v. United States, 562 U.S. 476,

487-88 (2011). In sum, the overarching task of a sentencing court is to fashion a sentence that is appropriate for the individual circumstances of the offense and the defendant, and is "sufficient, but not greater than necessary" to achieve the statutory goals of punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

Applying these principles to Mr. Ochoa-Joaquin should result in a sentence far below the 7-years recommended by Probation. As noted, it is requested that in the case of this individual defendant, under the individual circumstances of his case, a sentence of time-served will properly serve the purposes of sentencing. He was initially taken into custody on the high seas of the Pacific Ocean on July 8, 2017. He has been in continuous custody since, a term of approximately 16 months.

    1.    <u>Francisco Ochoa-Joaquin's personal history and circumstances</u>.

As the Pre-Sentence Report ("PSR") reflects, Mr. Ochoa-Joaquin is 41 years-old. He has no prior criminal record. He grew up in a small Mexican fishing village called Las Guacamayas located within Lazaro Cardenas on the Pacific coast of Mexico. At the time of this incident he was gainfully employed as the owner of a marine engine repair shop, a valuable service in a town dependent on its fishing economy.

His childhood was unremarkable. although the family sometimes struggled economically. Both his parents died at a relatively young age, his father at age 55 and his mother also at age 55. He stopped attending school at

4

age 15 in order to contribute to the family's income. At about that age he met a friend of his father's, Jose Amurabi Solis-Hernandez, who taught the young Francisco the skills of a marine-engine mechanic. As discussed later in this memorandum, Mr. Solis-Hernandez was later murdered for his refusal to assist narcotics traffickers.

    Mr. Ochoa-Joaquin is married and has four children, two boys and two girls, ranging in ages from 14 to 4. His wife reported to Probation that she is devastated without her husband and that they enjoyed an ideal marriage. Mr. Ochoa-Joaquin cannot discuss his family without dissolving into tears. His involvement in this offense has resulted in his family receiving threatening phone calls and his wife is frightened for her family's well-being. (PSR at ¶52.) Here is a photograph of Mr. Ochoa-Joaquin with his children:



2. <u>The circumstances of this offense</u>.

The issue of duress is one that counsel wishes to address head-on, emphasizing that it is only one factor for the Court to consider in imposing a just sentence. Counsel is keenly aware of the Court's reaction to similar claims advanced on behalf of co-defendants. Thus, to be clear, there is no claim here that Mr. Ochoa-Joaquin is innocent or that he wishes to withdraw his guilty plea. Whether he could ever have met each element of the daunting requirements of a justification/duress defense—*see*, *Dixon v. United States*, 548 U.S. 1 (2006)—is a moot question since he entered a guilty plea.

There is, however, a circumstance present in this case that differs from the others. As noted earlier, Mr. Ochoa-Joaquin's mentor in the marine

mechanic trade was murdered. As noted in the PSR, Mr. Ochoa-Joaquin's decision to participate in this offense was at least to some extent motivated by his fear of refusing. (PSR at page 15.) He made this claim the very first time he was interviewed by representatives of the United States on August 4, 2017. With regard to the murder of his father's friend, the PSR notes that verification of this event, occurring in April 2016, is readily available on the internet. (PSR 25.) What follows is an example of that publicity:



José Amurabi Solís Hernández fue ejecutado a balazos la mañana de este martes, en el interior del taller para motores fuera de borda que durante muchos años mantuvo en este puerto.

(Foto: Rafael Rivera Millán)

De acuerdo a los primeros datos aportados a la policía por vecinos de calle Guillermo Prieto esquina con avenida heroica Escuela Naval Militar,, donde se ubica el mercado de pescados y mariscos, junto a la desembocadura del río, a eso de las 08:40 horas de este martes, escucharon varias detonaciones y luego vieron salir corriendo a un sujeto armado, del taller de motores fuera de borda de José Amurabi.

3. <u>Conclusion</u>.

A sentence of seven years has the potential to destroy a young family. Mr. Ochoa-Joaquin's personal characteristics and life history all strongly suggest that he will never again engage in illegal activity. Probation notes that a below-Guidelines sentence is appropriate (to the extent that the Guidelines represent anything more than a single factor comprising the sentencing calculus.) The question is what sentence is sufficient under the circumstances of this case. Counsel respectfully urge that a sentence of time-served, allowing this relatively young man to re-join his family in Mexico and resume earning an honest living, is sufficient but not greater than needed.

## CONCLUSION

For all the foregoing reasons, Defendant Ochoa-Joaquin respectfully requests that the Court impose a sentence of time-served.

Dated: October 22, 2018
New York, New York

*/s/ David A. Ruhnke*
David A. Ruhnke, Esq.
Ruhnke & Barrett
29 Broadway, Suite 1412
New York, N.Y. 10006
(212)608-7949
(973)746-1490 (fax)
*Attorneys for Defendant Ochoa-Joaquin*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the above date this document was filed via ECF, thereby serving all parties.

*/s/ David A. Ruhnke*
David A. Ruhnke, Esq.